UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

SMITH PERCINTHE,

                Plaintiff,

- against -

PAUL E. JULIEN; HEATHER
ALMODOVAL; ANDREW W.
RHEOME; and S. GRANT,

                Defendants.
------------------------------------------------------- X

## OPINION AND ORDER

08 Civ. 893 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/4/08

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

       Smith Percinthe, proceeding pro se, brings this action against four New York State Correction Officers pursuant to 42 U.S.C. § 1983 ("section 1983").[1] Percinthe alleges that Officer Paul E. Julien physically assaulted him

---

[1] Heather Almodoval, who was named as a defendant in Percinthe's Complaint, worked as a nurse at the Fishkill Correctional Facility ("Fishkill") until 2003. See 7/16/08 Response of Jeb Harben, defendants' counsel ("Harben Response"), cover letter. Percinthe states that the Almodoval involved in this case is a Correction Officer who was on duty at Fishkill the afternoon of February 28, 2007. See 7/23/08 Memorandum of Law of Smith Percinthe ("Percinthe Mem.") at 3. It appears that Perncinthe meant to name Officer James Almodoval in his Complaint but Officer Almodoval was never served, having been misidentified as to both name and gender. See 8/11/08 Reply Memorandum of Jeb Harben at 2.

-1-

and that Officers Almodoval, Andrew Rheome and S. Grant failed to intervene. Percinthe seeks relief for the alleged use of excessive force in violation of the Eighth Amendment. Defendants Rheome and Grant ("defendants") move to dismiss Percinthe's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) Percinthe did not exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"); (2) Percinthe fails to state a claim against either Rheome or Grant; (3) Rheome and Grant are entitled to qualified immunity; and 4) the Eleventh Amendment bars Percinthe's claims against Rheome and Grant. For the reasons set forth below, defendants' motion is denied.

## II. BACKGROUND

For purposes of this motion, the factual allegations contained in Percinthe's Complaint ("Complaint") and in his memorandum of law in opposition to defendants' motion to dismiss are taken to be true. Percinthe was an inmate at Fishkill and is now an inmate at the Oneida Correctional Facility.[2] On February 28, 2007, as Percinthe left the Fishkill mess hall, Officer Julien commanded him to "get the fuck inside" a room. There, the Officer roughly searched Percinthe and

---

[2] See Complaint at 1, 2.

then asked him if he liked to "look at butt."[3] When Percinthe failed to respond, Officer Julien hit him from behind, hit his face and mouth, put him in a choke hold, and threw him face-first into the edge of a desk.[4] Officer Julien then once again applied a choke hold, this time until Percinthe almost lost consciousness, and said, "if you ever look at a butt or tell somebody what I did to you I will bust your ass."[5] This beating caused pain and swelling in Percinthe's face, neck, and lip, a loose and cracked tooth, tenderness in his neck, spinal displacement necessitating surgery, headaches, and psychological disturbance requiring medication.[6]

In his Complaint, Percinthe does not explicitly state when, under what circumstances, or even if, Officers Rheome and Grant entered the room where the assault occurred. However, he does allege that Officers Rheome and Grant "were involved"[7] and that they "faile[ed] to intervene."[8] In addition, Percinthe states

---

[3] *Id.* at 2.

[4] *See id.*

[5] *Id.*

[6] *See id.* at 3.

[7] *Id.*

[8] *Id.* at 4.

that Officers Rheome and Grant were "present during the . . . use of excessive force."[9]

Percinthe reported the incident on the day that it occurred in a written memorandum to Sergeant Beckwith.[10] He did not mention Officers Rheome and Grant in that memorandum.[11] Percinthe filed an official grievance on March 5, 2007, again with no mention of the defendants.[12] However, by the time the Inmate Grievance Program responded to the Grievance on March 12, 2007, Sergeant Beckwith had interviewed and obtained a statement from Officer Rheome concerning his connection to the incident.[13] Rheome told Beckwith that he had witnessed the incident and, like Officer Julien, he described the incident as a "pat-frisk" rather than an assault.[14] At some point during the investigation, Percinthe

---

[9] Percinthe Mem. at 3.

[10] *See* 2/28/07 Memorandum of S. Percinthe to Sergeant Beckwith ("Beckwith Memo"), Ex. C to Harben Response.

[11] *See id.*

[12] *See* 3/5/07 Grievance of Smith Percinthe ("Grievance"), Ex. B to Harben Response.

[13] *See* 3/12/07 Report by Superintendent of the Inmate Grievance Program ("Grievance Rep."), Ex. A to Percinthe Mem.

[14] *Id.*

told Sergeant Beckwith that four Correction Officers were present during the assault and identified Officer Grant as one of them.[15]

The Inmate Grievance Program informed Percinthe on March 12, 2007, that the "staff deny any improprieties."[16] Percinthe timely appealed to the Central Office Review Committee ("CORC").[17] CORC unanimously denied the appeal on April 11, 2007.[18] Percinthe filed the present Complaint against the Officers on January 25, 2008.[19]

---

[15] *See* Percinthe Mem. at 5.

[16] Grievance Rep.

[17] *See* 3/30/07 Receipt of Appeal, Ex. B to Percinthe Mem., at 1.

[18] *See* 4/11/07 Denial of Appeal by CORC ("Denial"), Ex. B to Percinthe Mem., at 2.

[19] Percinthe seeks monetary damages in the amount of $1,200,000 – $400,000 for the displacement of his spine, $400,000 for mental pain, and $400,000 for physical pain. *See* Complaint at 5.

## III. LEGAL STANDARDS

### A. Exhaustion of Administrative Remedies

The PLRA requires that a prisoner exhaust all administrative remedies before bringing an action regarding prison conditions.[20] The PLRA's exhaustion requirement is mandatory.[21] Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[22] Furthermore, the United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[23]

An inmate who has filed a grievance in the course of exhausting administrative remedies may later bring suit against involved individuals who

---

[20] *See* 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[21] *See Porter v. Nussle,* 534 U.S. 516, 524 (2002).

[22] *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir. 2001) (quotation marks and citation omitted, emphasis in original).

[23] *Porter,* 534 U.S. at 532.

-6-

were not specifically named in the grievance, but only so long as prison grievance procedures do not require that all such persons be named.[24] The purpose of a grievance is "'to alert prison officials of a problem, not to provide personal notice to a particular official that he or she may be sued.'"[25]

Whether or not a grievance must name all the persons involved in an alleged violation "will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[26] New York regulations provide that "[i]n addition to the grievant's name, department identification number, housing unit, program assignment, etc., [a] grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, *i.e.* specific persons/areas contacted and responses received."[27] This language has been interpreted to mean that "there is no requirement that an inmate *must* identify every individual by name in order to exhaust his remedies as to those

---

[24] *See Jones v. Bock*, 127 S. Ct. 910, 923 (2007) ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.").

[25] *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

[26] *Id.*

[27] 7 New York Code, Rules and Regulations ("N.Y.C.R.R.") § 701.5(a)(2).

-7-

individuals[.]"²⁸

However, "the mere fact that the plaintiff filed *some* grievance . . . does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to the grievance."²⁹ For instance, an inmate has not exhausted administrative remedies against a person – not named in a grievance – whom the inmate later claims "to have been aware of . . . systemic problems and who failed to correct them."³⁰ The question for this Court is "whether [the] plaintiff's grievance sufficiently alerted prison officials that he was alleging some wrongdoing beyond" that alleged against the person or persons specifically named in the grievance.³¹

**B.  Motion to Dismiss**

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and

---

²⁸ *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005) (interpreting identical language in former 7 N.Y.C.R.R. § 701.7(a)(1)(i), emphasis in original).

²⁹ *Id.* (emphasis in original).

³⁰ *Amador v. Superintendants of the Dep't of Corr. Servs.*, No. 03 Civ. 650, 2007 WL 4326747, at *8 (S.D.N.Y. Dec. 4, 2007).

³¹ *Turner*, 376 F. Supp. 2d at 325.

-8-

plain statement of the claim showing that the pleader is entitled to relief.'"[32] When deciding a motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[33] and "draw all reasonable inferences in plaintiff's favor."[34]

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[35] Although the complaint need not provide "detailed factual allegations,"[36] it must "amplify a claim with some factual allegations . . . to render the claim *plausible*."[37] The test is no longer whether there is "no set of facts" that plaintiff could prove "which

---

[32] *Erickson v. Pardus*, __U.S.__; 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[33] *Bell Atlantic Corp. v. Twombly*, __U.S.__; 127 S. Ct. 1955, 1964 (2007).

[34] *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[35] *See Bell Atlantic*, 127 S. Ct. at 1970.

[36] *Id.* at 1964. *See also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007) (applying the standard of plausibility outside *Twombly's* antitrust context).

[37] *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11).

-9-

would entitle him to relief."[38] Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"[39]

Although the court must take the plaintiff's allegations as true, "the claim may still fail as a matter of law . . . if the claim is not legally feasible."[40]  In addition, "bald assertions and conclusions of law will not suffice."[41]  However, a pro se plaintiff is entitled to have his pleadings held to "less stringent standards than formal pleadings drafted by lawyers."[42]  Accordingly, a pro se plaintiff's papers should be interpreted "to raise the strongest arguments that they suggest."[43]

---

[38] *Bell Atlantic*, 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45-46 (1957)) ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.").

[39] *ATSI Commc'ns*, 493 F.3d at 98 (quoting *Bell Atlantic*, 127 S. Ct. at 1965).

[40] *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 459 (S.D.N.Y. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006)).

[41] *Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (quotation omitted).

[42] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[43] *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quotation marks and citation omitted).

## C. Qualified Immunity

A traditional qualified immunity defense may be asserted on a Rule 12(b)(6) motion "as long as the defense is based on facts appearing on the face of the complaint."[44] Where defendants attempt to assert a qualified immunity defense on a motion to dismiss, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."[45]

Government officials performing discretionary functions are generally granted qualified immunity and are immune from suit provided that "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[46] The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing

---

[44] *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route.").

[45] *Id.*

[46] *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

-11-

law that [his] conduct was unlawful."[47] Thus, government officials are entitled to qualified immunity at the dismissal stage only where it appears on the face of a plaintiff's complaint that they did not violate clearly established rights of which they should have known.

D. **Sovereign Immunity**

As a threshold matter, this Court lacks subject matter jurisdiction over a claim for damages against state officials sued in their official capacity. Because a state official acting in his or her official capacity is protected by the Eleventh Amendment, a "section 1983 claim for damages against a state official can only be asserted against that official in his or her individual capacity."[48]

The Second Circuit has held that "the failure of a complaint to specify that claims against government officials are asserted against them in their individual capacities generally does not warrant an outright dismissal at the pleading stage."[49] Such reluctance to dismiss on Eleventh Amendment grounds stems from the reality that "in many cases, a complaint against public officials will

---

[47] *Id.* (quotation marks and citation omitted).

[48] *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989).

[49] *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529-30 (2d Cir. 1993).

-12-

not clearly specify whether officials are sued personally, in their official capacity, or both, and only the course of proceedings . . . will indicate the nature of the liability to be imposed."[50]

## IV. DISCUSSION

The instant motion presents four issues: (1) whether Percinthe exhausted his administrative remedies as to Rheome and Grant, (2) whether Percinthe has stated a claim against Rheome and Grant, (3) whether Rheome and Grant are entitled to qualified immunity as a matter of law, and (4) whether Rheome and Grant are protected from liability for monetary damages by the Eleventh Amendment.

### A. Percinthe Has Exhausted Administrative Remedies as to Officers Rheome and Grant

With regard to the alleged incident of February 28, 2007, Percinthe has followed New York's prison grievance procedure to its conclusion.[51] In so doing, he both exhausted his administrative remedies and alerted prison officials to the possible involvement of Officers Rheome and Grant in the alleged

---

[50] *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252 (2d Cir. 1991) (quotation marks and citations omitted).

[51] *See* Receipt and Denial. *See also* 7 N.Y.C.R.R. § 701.5(d) (describing appeal to CORC as the third and final step in the state's prison grievance procedures).

-13-

wrongdoing. On March 12, 2007, one week after Percinthe filed his Grievance, the superintendent of the Inmate Grievance Program reported that Sergeant Beckwith had interviewed and taken a statement from Officer Rheome in connection with the alleged assault.[52] That report stated that Officer Rheome "den[ied] the allegations in the grievance, indicating that [he] observed Officer Julien perform a pat-frisk of [Percinthe]. . . [Rheome] did not observe any unprofessional conduct on [Julien's] part."[53] Rheome explicitly did not deny having witnessed the interaction between Officer Julien and Percinthe. He merely characterized that interaction in terms identical to those used by Officer Julien – to wit, as a "pat-frisk" rather than an assault. Prison officials were thus alerted to Officer Rheome's presence during the incident, whether it happened as Percinthe described it or as Officer Julien described it. Moreover, Percinthe alleges – and the Court must assume the truth of his allegations for the purpose of this motion – that he told Sergeant Beckwith that four officers were present during the alleged assault, including Officer Grant.[54]

As a result, Percinthe adequately alerted prison officials to the

---

[52] *See* Grievance Rep.

[53] *Id.*

[54] *See* Percinthe Mem. at 5.

-14-

involvement of Officers Rheome and Grant in the February 28, 2007, incident. Percinthe followed the prescribed procedures for making and appealing a grievance, and he provided prison officials with the information needed in order to investigate Rheome and Grant's involvement in the alleged incident.

### B. Percinthe Has Stated a Claim Against Officers Rheome and Grant

Percinthe's pleadings, construed liberally, imply that Officers Rheome and Grant were in a position to intervene in the alleged assault but failed to do so. In their motion to dismiss, Grant and Rheome do not argue that a deliberate failure to intervene would not rise to the level of a constitutional deprivation. Instead, defendants argue that Percinthe never explicitly placed them in the room where the incident allegedly occurred at the time that it was allegedly occurring. They state that Percinthe "merely alleges that these defendants were in the vicinity of the incident," and that "nothing in plaintiff's pleadings supports the conclusion that [Rheome and Grant] were even in a position to prevent the alleged incident given that it occurred so quickly even if they did not observe it."[55]

These arguments are unavailing. Percinthe states in his Complaint

---

[55] Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 7.

that the Officers "were involved"[56] in the assault and that they "fail[ed] to intervene."[57] While these allegations do not clearly spell out the individual roles that Officers Rheome and Grant played in the incident, they imply more than a mere suggestion that the Officers were in the general vicinity when the incident occurred. In any event, the allegations are sufficient to give defendants fair notice of Percinthe's claim and the ground upon which it rests.[58] This is particularly so because the court must "liberally construe" a *pro se* complaint, "however inartfully pleaded."[59]

### C. Facts Supporting Officers Rheome and Grant's Claim of Qualified Immunity Do Not Appear on the Face of Percinthe's Complaint

The Officers do not contest the clarity of the law, the Supreme Court's recognition of the right to be free from cruel and unusual punishment, or the evident unlawfulness of the alleged conduct.[60] Instead, Officers Rheome and Grant argue that their conduct was insufficiently alleged in Percinthe's Complaint.

---

[56]  Complaint at 3.

[57]  *Id.* at 4.

[58]  *See Erickson*, 127 S. Ct. at 2200.

[59]  *Id.* (quotation marks and citations omitted).

[60]  *See Luna*, 356 F.3d at 490.

-16-

They state that Percinthe "merely asserts that these defendants were in the vicinity of the alleged incident and should have intervened."[61] When the court draws "all reasonable inferences from the facts alleged, not only those that support [Percinthe's] claim, but also those that defeat the immunity defense,"[62] it is clear that Percinthe's Complaint should be given a broader reading. Thus, defendants are not entitled to qualified immunity at this stage of the litigation.

### D. Percinthe's Claims Are Presumed to Have Been Directed Against Rheome and Grant in Their Individual Capacities

At the dismissal stage, a court will not read an ambiguous complaint to be directed against state officials solely in their official capacities.[63] This is particularly so where, as here, a plaintiff is proceeding pro se.[64] While Percinthe's Complaint does not specify whether Rheome and Grant are sued in their personal or official capacities, reading his pro se Complaint as broadly as possible, the Court presumes that the defendants are sued in their individual capacities, as suit

---

[61] Def. Mem. at 7.

[62] *McKenna*, 486 F.3d at 436.

[63] *Ying Jing Gang*, 996 F.2d at 529-30.

[64] *See, e.g., Pritchett v. Artuz*, No. 99 Civ. 3957, 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000) (construing an ambiguous pro se complaint against state officials as stating a claim against those officials in their personal capacity).

-17-

against them in their official capacities is barred. Thus, defendants' motion to dismiss on sovereign immunity grounds is denied.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied. The Clerk of the Court is directed to close this motion [#10 on the docket]. A conference is scheduled for Tuesday, November 4, 2008, at 4:30 p.m., in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
October 1, 2008

- **Appearances** -

**Plaintiff (Pro Se):**

Smith Percinthe
ID # 03-A-3595
Oneida Correctional Facility
6100 School Road
P.O. Box 4580
Rome, NY 13442

**For Defendants:**

Jeb Harben
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York, NY 10271
(212) 416-8610