UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

SMITH PERCINTHE,

                Plaintiff,

   - against -

PAUL E. JULIEN, HEATHER
ALMODOVAL, ANDREW W. RHEOME, S.
GRANT,

            Defendants.
------------------------------------------------------- X

**OPINION AND ORDER**

**08 Civ. 893 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Smith Percinthe, proceeding pro se, brings this action against four New York State Correction Officers pursuant to section 1983 of Title 42 of the United States Code ("section 1983"). Percinthe, seeking relief for the alleged use of excessive force and failure to protect in violation of the Eighth Amendment, alleges that Officer Paul Julien physically assaulted him while Officers James Almodoval, Andrew Rheome, and Steven Grant failed to intervene. Defendants Almodoval, Rheome, and Grant move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the following grounds: (1) they are entitled to

qualified immunity, and (2) Percinthe did not exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). In addition, all defendants move to dismiss Percinthe's claims on the grounds of implausibility. For the reasons that follow, summary judgment is granted as to Almodoval, Rheome, and Grant, but denied as to Julien.

## II.    BACKGROUND

### A.    Facts

Percinthe was an inmate at Fishkill at the time of the alleged incident and is now an inmate at the Marcy Correctional Facility.[1] All parties agree that on February 28, 2007, at approximately 4:30 p.m., Officer Julien performed a pat frisk on Percinthe.[2] Percinthe alleges that in the midst of the search, Julien asked him whether he "liked looking at butt," and then punched Percinthe's face, mouth, and neck.[3] Percinthe alleges that Julien then applied a chokehold, threw him into a desk,[4] and hit Percinthe's face while continuing the chokehold until Percinthe

---

[1]    See Plaintiff's Counterstatement Pursuant to Local Rule 56.1 ("Pl. Counter. 56.1") ¶ 1; 2/19/09 Pro Se Memorandum, Change of Address.

[2]    See Plaintiff's Response to Defendants' Rule 56.1 Statement ¶ 3.

[3]    Pl. Counter. 56.1 ¶¶ 6, 8.

[4]    See id. ¶ 9.

almost lost consciousness.[5]  Before allowing Percinthe to return to his housing

unit, Julien allegedly warned, "if you ever look at a butt or tell somebody what I

did to you I will bust your ass."[6]  Julien disagrees with Percinthe's version of the

encounter, claiming that he simply pat frisked Percinthe and counseled him

regarding inappropriate staring at female officers.[7]

Percinthe also claims that Officers Almodoval, Rheome, and Grant

were present for most of the alleged assault.[8]  Grant denies seeing Percinthe and

Julien together during the incident,[9] while Amodoval and Rheome admit to seeing

part of the pat frisk, but deny any impropriety on Julien's part.[10]

---

[5]     See 11/26/08 Deposition of Smith Percinthe ("Percinthe Dep."), Ex. K to 3/20/09 Declaration of Jeb Harben, defendants' counsel ("Harben Decl."), at 24-25.

[6]     Pl. Counter. 56.1 ¶ 10.

[7]     See Defendants' Statement of Facts Pursuant to Local Rule 56.1 ("Def. 56.1") ¶ 3.

[8]     See Percinthe Dep. at 23.

[9]     See Def. 56.1 ¶ 5.

[10]    See id. ¶ 4.  Inmate Billy Sigue also attested to witnessing part of the incident. See 10/12/07 Inspector General's Office Investigative Report ("Inspector General's Report"), Ex. E to Harben Decl. ("[Sigue] did witness Officer Julien choke and then take Inmate Percinthe to the floor.").

Percinthe, without pointing to admissible evidence beyond his own

assertions, alleges that the incident caused him serious injury. In his Complaint,

Percinthe claims that the attack resulted in

> [f]acial swelling, busted lip, front top left tooth cracked and
> loose, swelling to base of neck, both sides [of] neck tender
> upon palpation, anterior neck tender, spinal displacement
> to the point [that] I am in need of surgery, exacerbation of
> pain in right shoulder, constant headaches, increase of Para
> nasal sinus disease, paranoia, mental disturbance to the
> point that I am taking psyche [sic] medications [listing
> Zoloft, Visteraul, Loratadine, Naproxen, Methocarbamol,
> Ibuprofen, Accolate Zafirlukast, Amoxicillin Clavulanate,
> Acetaminophen, Clingdancyin, Triamcinolone nasal spray,
> and Methocarbamol].[11]

Percinthe further alleges that an x-ray "determined that I also had a right shoulder

injury."[12]

Percinthe's visits to the prison's infirmary subsequent to the alleged

attack substantiate "a little mark on his lower lip" and a "slightly loose tooth," as

reported by Lorraine Grasso, the nurse who treated Percinthe on the day of the

---

[11]     First Amended Complaint at 3.

[12]     Notice of Intention to File a Claim, Ex. E to 7/23/08 Memorandum of
Law of Smith Percinthe ("Percinthe Mem."). Percinthe has not provided a medical
report that substantiates the x-ray or supports Percinthe's conclusions about his
shoulder injury.

incident.[13]  Her medical report of his visit[14] and photos taken that day corroborate

her account.[15]  A medical professional who examined Percinthe in October of 2007

determined, "I do not believe [Percinthe] has objective problems."[16]

### B.    Administrative Grievance History

Percinthe reported the attack to Sergeant Beckwith on the day that it

occurred and sent him a memorandum detailing the incident.[17]  He did not mention

Officers Almodoval, Rheome, and Grant in that memorandum,[18] but he claims that

the day after the alleged attack, he informed Beckwith that there were three

officers, in addition to Officer Julien,  present during the incident.[19]  Percinthe

---

[13]    3/26/07 Inspector General's Report of Interview of Lorraine Grasso,
Ex. J to Harben Decl.

[14]    *See* 2/28/07 Inmate Injury Report Regarding Smith Percinthe, Ex. J to
Harben Decl.

[15]    *See* 2/28/07 Photographs of Smith Percinthe, Ex. L to Harben Decl.

[16]    11/30/07 Report of Consultation Regarding Smith Percinthe, Ex. M to
Harben Decl.

[17]    *See* 2/28/07 Memorandum of S. Percinthe to Sergeant Beckwith, Ex.
D to Harben Decl.

[18]    *See id.*

[19]    *See* Pl. Counter. 56.1 ¶ 20.

filed an official grievance on March 5, 2007, again with no mention of Almodoval,

Rheome, or Grant.[20]  In full, the grievance states,

> [At] approximately 4:30 pm February [sic] 28, 2007 I,
> Smith Percinthe [sic] was physically assaulted by Officer
> Julien the 3-11 shift officer; [sic] and threatened. I fear for
> my life. I don't know who will come after me next for the
> retaliation by Officer Julien. I want this officer to pay the
> price for what he has done. I request that no retaliation be
> imposed as was violated from my previous grievance.[21]

When the Inmate Grievance Program responded on March 12, 2007, Sergeant

Beckwith had already interviewed and obtained statements from Almodoval and

Rheome concerning their connection to the incident.[22]  Almodoval and Rheome

---

[20]    *See* 3/5/07 Grievance of Smith Percinthe ("Grievance"), Ex. B to
Harben Decl.

[21]    *Id.*

[22]    *See* 3/12/07 Inmate Grievance Program Superintendent's Decision
Regarding Plaintiff's Grievance ("Grievance Resp."), Ex. C to Harben Decl.
Beckwith denies conducting an investigation, but Almodoval's and Rheome's
memoranda prove that they were included in the investigation, if not by Beckwith
himself. *See* 2/28/07 Memorandum Prepared by Andrew Rheome ("Rheome
Mem."), Ex. G to Harben Decl.; 2/28/07 Memorandum Prepared by Jimmy
Almodoval ("Almodoval Mem."), Ex. H to Harben Decl.   Grant was not asked to
write a memorandum as he claimed that he did not witness the incident. *See* Def.
56.1 ¶ 5.

6

told Beckwith that they had witnessed at least part of the incident and — like

Julien — described it as a "pat-frisk" and not an assault.[23]

The Inmate Grievance Program reported the incident to the Inspector

General's office for investigation.[24]  After the Inspector General, who questioned

all parties to the suit under oath[25] (with the exception of Grant) found Percinthe's

claims to be unsubstantiated,[26] Percinthe appealed to the Program's Central Office

Review Committee.[27]  The appeal was unanimously denied on April 11, 2007.[28]

### C.   Procedural History

Percinthe filed the present Complaint against the Officers on January

25, 2008.  Officers Julien, Rheome, and Grant moved to dismiss the suit in July of

---

[23]   *See* Almodoval Mem.; Rheome Mem.

[24]   *See* Grievance Resp.

[25]   *See* 7/3/07 Transcript of Questioning of Paul Julien by the Inspector General's Office, Ex. F to Harben Decl.; 7/3/07 Transcript of Questioning of Andrew Rheome ("Rheome Transcript"), Ex. G to Harben Decl.; 7/3/07 Transcript of Questioning of Jimmy Almodoval ("Almodoval Transcript"), Ex. H to Harben Decl.; Percinthe Dep.

[26]   *See* Inspector General's Report.

[27]   *See* 3/30/07 Receipt of Appeal, Ex. B to Percinthe Mem.

[28]   *See* 4/11/07 Denial of Appeal by CORC, Ex. B to Percinthe Mem.

2008, but their motion was denied.[29]  In October of 2008, Percinthe filed an

Amended Complaint to include defendant James Almodoval, who was previously

misidentified.[30]

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."[31]  "'An issue of fact is genuine if

the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'"[32]  A fact is material when it "'might affect the outcome of the

---

[29]     *See Percinthe v. Julien*, No. 08 Civ. 893, 2008 WL 4489777
(S.D.N.Y. Oct. 4, 2008).

[30]     Almodoval filed his own motion for summary judgment shortly after
the other defendants filed their motion, with arguments identical to those already
presented to the Court.  Because there is no prejudice to Percinthe, insofar as
Almodoval's arguments are the same as those of his co-defendants, the Court
addresses both motions for summary judgment.

[31]     Fed. R. Civ. P. 56(c)(2).

[32]     *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir.
2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

suit under the governing law.'"[33]  "It is the movant's burden to show that no genuine factual dispute exists."[34]

      In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[35]  "Rule 56 'mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[36]  To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[37] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[38]  Furthermore, a non-moving party may not "rely merely on denials

---

[33]    *Ricci v. DeStefano*, 530 F.3d 88, 109 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[34]    *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[35]    *See* Fed. R. Civ. P. 56(c)(2).

[36]    *Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[37]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[38]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

or allegations in its own pleadings."[39]  However, "'all that is required [from the

non-moving party] is that sufficient evidence supporting the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial.'"[40]  When relying on an affidavit, a party must set out

facts that would be admissible at trial.[41]

      In determining whether a genuine issue of material fact exists, the

court must construe "'the evidence in the light most favorable to the non-moving

party and draw[] all reasonable inferences in that party's favor.'"[42]  However, "[i]t

is a settled rule that '[c]redibility assessments, choices between conflicting

versions of the events, and the weighing of evidence are matters for the jury, not

for the court on a motion for summary judgment.'"[43]  Summary judgment is

---

[39]     Fed. R. Civ. P. 56(e)(2).

[40]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199,
206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

[41]     *See* Fed. R. Civ. P. 56(e)(1).

[42]     *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008) (quoting
*Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).

[43]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl
v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

therefore "only appropriate when there is no genuine issue as to any material fact, making judgment appropriate as a matter of law."[44]

Where the plaintiff is proceeding pro se, his or her pleadings must be considered under a more lenient standard than that accorded to "formal pleadings drafted by lawyers,"[45] and his or her pleadings must be "interpret[ed] . . . to raise the strongest arguments they suggest."[46] However, a pro se plaintiff must still meet the usual requirements of summary judgment.[47] Thus, a pro se plaintiff's "'failure to allege either specific facts or particular laws that have been violated

---

[44]    *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486-87 (2d Cir. 2006)).

[45]    *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Because [plaintiff] is a pro se litigant, we read his supporting papers liberally.")).

[46]    *Burgos*, 14 F.3d at 790.

[47]    *See Pearson Educ., Inc. v.* Liao, No. 07 Civ. 2423, 2008 WL 2073491, at *2 (S.D.N.Y. May 13, 2008) (citing *Carey v. Crescenz*, 923 F.2d 18, 21 (2d Cir. 1991)). *See also Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4470, 2004 WL 2008848, at *4 (S.D.N.Y. Sept. 8, 2004) ("'Proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment.'") (quoting Cole v. Artuz, No. 93 Civ. 5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1998)).

renders [his or] her attempt to oppose defendants' motion [for summary judgment] ineffectual.'"[48]

## B.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA")  mandates that a prisoner exhaust all administrative remedies before bringing an action regarding prison conditions.[49]  Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[50] Moreover, the exhaustion of administrative remedies must be proper — that is, in compliance with a prison grievance program's deadlines and other critical procedural rules — in order to suffice.[51]  "[F]ailure to exhaust is an affirmative

---

[48]     *Mambru v. Inwood Cmty. Serv., Inc.*, No. 06 Civ. 2155, 2007 WL 4048007, at*2 (quoting *Kadosh v. TRW*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994)).

[49]     *See* 42 U.S.C. § 1997e(a) (providing that "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") ("section 1997"). *See also Jones v. Bock*, 549 U.S. 199, 202 (2007).

[50]     *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) (quotation marks and citation omitted, emphasis in original).

[51]     *See Woodford v. Ngo*, 548 U.S. 81, 90-92 (2006).

defense under the PLRA."[52]  The Supreme Court has held that "the PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."[53]

> "'The level of detail necessary in a grievance to comply with the

grievance procedures will vary from system to system and claim to claim,' because

'it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion.'"[54]  New York regulations provide that "[a] grievance should

contain a concise, specific description of the problem and the action requested and

indicate what actions the grievant has taken to resolve the complaint, ie., specific

persons/areas contacted and responses received."[55]  The Second Circuit has found

that these regulations, "[do] not contain an express identification requirement,"

---

[52]    *Jones*, 549 U.S. at 216.

[53]    *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[54]    *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones*, 549 U.S. at 218).

[55]    7 New York Code, Rules and Regulations ("N.Y.C.R.R.") § 701.5(a)(2).

13

and hence the grievance procedure may be exhausted against an individual without that person being named in a grievance.[56]

The Second Circuit has held that "'[a]lerting the prison officials as to the nature of the wrong for which redress is sought,' [without filing a formal grievance] does not constitute proper exhaustion."[57] "[N]otice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance.'"[58] However, the Second Circuit has held that a claim may be exhausted when it is closely associated with, but not explicitly mentioned in, an exhausted grievance, as long as the claim was specifically addressed in the prison's denial of the grievance and, hence, was properly investigated.[59] Ultimately, the question for this Court is

---

[56]    *Espinal*, 558 F.3d at 126.

[57]    *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (quoting *Braham v. Clancy*, 425 F.3d 177, 184 (2d Cir. 2005) and citing *Woodford*, 548 U.S. at 94-95) (finding plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to the MDC's staff").

[58]    *Id.* (quoting *Woodford*, 548 U.S. at 95). *Accord Jones*, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

[59]    *See Espinal*, 558 F.3d at 128 (holding that the plaintiff's claim for denial of medical care was exhausted by a grievance alleging excessive force and

14

"whether [the] plaintiff's grievance sufficiently alerted prison officials that he was alleging some wrongdoing beyond" that alleged against the person or persons specifically named in the grievance.[60]

## C.    Qualified Immunity

Government officials performing discretionary functions are generally granted qualified immunity and are immune from suit provided that "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[61] The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful."[62]

---

retaliation, explaining, "while Espinal's grievance . . . does not explicitly discuss the misconduct by medical personnel which is alleged in the complaint, it is clear that the State considered these allegations when reviewing Espinal's grievance," because denial of medical care was addressed in the grievance's denial).

[60]    *Turner v. Goord*, 376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005) (citing *Ortiz v. McBride*, 380 F.3d 649, 653-54 (2d Cir. 2004)).

[61]    *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

[62]    *Id.* (quotation marks and citation omitted).

15

### 1.    Failure to Protect

It is clearly established law that the Eighth Amendment not only prohibits excessive force, but also "'requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody.'"[63]  This includes a duty to protect inmates from harm threatened by other officers — "it is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."[64]

"To prevail on a claim that officials have failed to protect an inmate from harm, a plaintiff must demonstrate that, objectively, the conditions of his incarceration posed a substantial risk of serious harm and, subjectively, that the defendant acted with deliberate indifference."[65]  An official acts with deliberate indifference when he "'has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to

---

[63]    *Beckles v. Bennett*, No. 05 Civ. 2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).

[64]    *Mack v. Town of Wallkill*, 253 F. Supp. 2d 552, 559 (S.D.N.Y. 2003) (citing O'Neill *v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)).

[65]    *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

abate the harm.'"[66] "Liability will attach if the officer had a realistic opportunity

to intervene to prevent the harm from occurring."[67] "'Summary judgment based

. . . on qualified immunity requires that no disputes about material facts remain.'"[68]

### D.    Implausibility

While a court must not "weigh the credibility of the parties at the

summary judgment stage," when "the plaintiff relies almost exclusively on his

own testimony, much of which is contradictory and incomplete, it will be

impossible for a district court to determine whether 'the jury could reasonably find

for the plaintiff . . . without making some assessment of the plaintiff's account."[69]

"'[W]hen the facts alleged are so contradictory that doubt is cast upon their

plausibility, [the court may] pierce the veil of the complaint's factual allegations

---

[66]    *Id.* (quoting *Lee v. Artuz*, No. 96 Civ. 8604, 2000 WL 231083, at *5
(S.D.N.Y. Feb. 29, 2000) (quoting *Hayes*, 84 F.3d at 620).

[67]    *Id.* (citing *O'Neill*, 839 F.2d at 11-12).

[68]    *Rivera v. Lawrence*, No. 09 Civ. 0967, 2009 WL 1734735, at *7
(N.D.N.Y. June 18, 2009) (quoting *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir.
1998)).

[69]    *Jeffreys*, 426 F.3d at 554.

17

. . . and dismiss the claim.'"[70] This analysis applies when "'[no] reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint.'"[71] However, "'if there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was ambiguous, confusing, or simply incomplete.'"[72]

## IV.   DISCUSSION

The instant motion presents three issues: (1) whether Almodoval, Rheome, and Grant are entitled to qualified immunity, (2)  whether Percinthe exhausted his administrative remedies as to Rheome, Grant, and Almodoval, and (3) whether Percinthe's claims against Julien, Almodoval, Rheome, and Grant are implausible.

### A.     Almodoval, Rheome, and Grant Are Not Entitled to Qualified Immunity

---

[70]     *Id.* at 555 (quoting *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998)).

[71]     *Id.* (quoting *Schmidt v. Tremmel*, No. 93 Civ. 8588, 1995 WL 6250, at *10-*11 (S.D.N.Y. Jan. 6, 1995)).

[72]     *Id.* (quoting *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998)).

Almodoval, Rheome, and Grant argue that they are entitled to qualified immunity because Percinthe has failed to allege that they had knowledge of the risk to Percinthe or a reasonable opportunity to intervene, thereby precluding liability.[73] However, Percinthe asserts, "[Julien] forced me inside of the . . . area and told me to get on the wall and that's when I saw the three other officers on the right-hand corner by the door while this officer physically assaulted me," thereby alleging that the defendants witnessed at least part of the alleged attack.[74] The manner in which Percinthe describes the incident — consisting of multiple punches and an extended chokehold — would permit a rational trier of fact to reasonably conclude that the Officers had both knowledge of the attack and a reasonable opportunity to intervene.[75]

## B.    Percinthe Has Not Exhausted Administrative Remedies Regarding His Failure to Protect Claim

Almodoval, Rheome, and Grant argue that Percinthe's claim against them has not been exhausted because Percinthe did not grieve their failure to

---

[73]    *See* Def. Mem. at 8; Almodoval Mem. at 7.

[74]    Percinthe Dep. at 23.

[75]    *See id.* at 23-27.

protect him.[76]  When I first considered this issue, I ruled that Percinthe met the

relatively light burden associated with a motion to dismiss by alleging that he had

informed Beckwith of the presence of other officers and that the prison had

therefore questioned those officers.  Percinthe thereby alleged that the prison was

aware of his failure to protect claim and had fully investigated it.[77]  However, a

motion for summary judgment sets a higher bar for a complainant than a motion to

dismiss.  Percinthe fails to meet the summary judgment bar because he offers no

evidence to support his allegation that he informed Beckwith of his failure to

protect claim or his allegation that the prison actually investigated that claim.

     In his 56.1 Counterstatement, Percinthe states that he informed

Beckwith that, "Almodoval, Rheome, and Grant stood by and refused to

intervene."[78]  However, Percinthe does not point to any evidence, including his

own sworn testimony, to support this statement.  Assuming, *arguendo*, that

---

[76]     *See* Defendants' Memorandum of Law in Support of Their Motion for
Summary Judgment ("Def. Mem.") at 2; Memorandum of Law in Support of
Defendant Jimmy Almodoval's Motion for Summary Judgment ("Almodoval
Summary Judgment Mem.") at 2.

[77]     *See Percinthe*, 2008 WL 4489777, at *4.  While Almodoval was not
yet joined as a defendant when this ruling was issued, the identical analysis
applies to him.

[78]     *See* Pl. Counter. 56.1 ¶ 20.

Percinthe informed Beckwith of the presence of Almodoval, Rheome, and Grant during the incident, Percinthe has failed to show that he alerted Beckwith to any wrongdoing on their part.  The mere presence of witnesses does not necessarily implicate any wrongdoing on their part.

Furthermore, even if Percinthe verbally informed Beckwith of his failure to protect claim, verbal notice alone is insufficient to exhaust a claim.[79] Under the *Espinal* standard, the prison must have specifically investigated the claim, and Percinthe has offered no evidence in support of his allegation that the prison did so here.[80]  While Almodoval and Rheome were questioned during the investigation of Percinthe's excessive force claim, there is no evidence to suggest that this investigation was anything other than a general inquiry into Julien's alleged wrongdoing.[81]  In *Espinal*, the Second Circuit ruled that a claim that was not expressly included in a grievance was nonetheless fully grieved.  In so ruling, the Second Circuit relied on the fact that the claim was specifically addressed in

---

[79]     *See Macias*, 495 F.3d at 44 (where informally complaining to prison staff did not exhaust a claim).

[80]     *See* 6/5/09 Plaintiff's Memorandum of Law in Opposition to Defendant's [sic] Motion for Summary Judgment at 8.

[81]     *See* Almodoval Mem.; Rheome Mem.; Almodoval Transcript.; Rheome Transcript.

the prison's denial of the plaintiff's grievance and, hence, was investigated by the prison.[82] Here, the Superintendant's Decision regarding Percinthe's grievance falls far short of directly addressing a failure to protect claim.[83] The decision only responds to Percinthe's excessive force claim, stating that Julien "denies assaulting you or threatening you" and that Almodoval and Rheome "*deny the allegations in the grievance*, indicating that they observed Officer Julien perform a pat-frisk . . . and that they did not observe any unprofessional conduct on *his* part."[84] Because Percinthe's succinct grievance refers only to his excessive force claim (and fails to mention that Officers were nearby during the alleged attack), Almodoval's and Rheome's denials relate exclusively to the excessive force claim.[85] In denying wrongdoing on Julien's part, neither Almodoval nor Rheome address any potential wrongdoing on their part. Accordingly, the prison's Grievance Response cannot be construed as directly addressing a failure to protect claim. The memoranda written by Almodoval and Rheome also exclusively focus

---

[82]     *See Espinal*, 558 F.3d at 128.

[83]     *See* Grievance Resp.

[84]     *Id.* (emphasis added).

[85]     *See* Grievance.

22

on potential wrongdoing on Julien's part.[86]   In sum, because the prison was not properly alerted to Percinthe's failure to protect claim, nor did the prison clearly investigate the claim, Percinthe has failed to exhaust administrative remedies with regard to that claim.   Thus, defendants Almodoval, Rheome, and Grant must be dismissed, without prejudice, based on Percinthe's failure to exhaust his administrative remedies.

## C.   Percinthe's Claims Against Julien Are Plausible

All of the defendants argue that Percinthe's claims should be dismissed for implausibility, noting that his injuries do not reflect the attack that he describes, that his description of the incident has changed over time, and that Julien could not possibly have restrained Percinthe.[87]   However, Percinthe's allegations and testimony do not reach the level of inconsistency and lack of substantiation that would permit the Court to dismiss on these grounds. Percinthe's testimony regarding his injuries is consistent, and the added details regarding the alleged attack — namely, that the chokehold lasted for five minutes

---

[86]   The transcripts of Ortiz's questioning of Almodoval and Rheome are inconclusive.  Inspector Ortiz's questions focus on Julien's alleged offense, but because neither Officer admits to seeing Julien exercise excessive force, there was no cause for Ortiz to question their alleged failure to protect. *See* Almodoval Transcript; Rheome Transcript.

[87]   *See* Def. Mem. at 10; Almodoval's Mem. at 9-10.

and that while in the chokehold Percinthe hit a desk and then the floor — simply elaborate upon his earlier incomplete account of the incident.  Furthermore, the fact that Percinthe is a physically strong man does not cast doubt upon his story; this would not be the first time that a large, muscular inmate was restrained by a Correction Officer.

## V.    CONCLUSION

For the foregoing reasons, summary judgment is granted to defendants Almodoval, Rheome, and Grant, and denied as to defendant Julien. The Clerk of the Court is directed to close this motion (Docket # 34 and 46).  The Pro Se Office is directed to send Mr. Percinthe the form  necessary to request appointment of counsel.  Percinthe is directed to complete that form and return it to this Court forthwith.  A conference is scheduled for September 11, 2009 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 24, 2009

24

## -Appearances-

**Plaintiff (Pro Se)**:

Smith Percinthe
ID # 03-A-3595
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

**For Defendants:**

Jeb Harben
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York, NY 10271
(212) 416-8610